McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
Jared Gordon #227980
 *jared.gordon@mbswc.com*
H. Annie Duong #319953
 *annie.duong@mbswc.com*
7647 North Fresno Street
Fresno, California 93720
Telephone:     (559) 433-1300
Facsimile:     (559) 433-2300

Attorneys for Defendant

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LINDA SLADE, Individually and as the representative of a class of similarly situated persons,<br><br>                    Plaintiff,<br><br>          v.<br><br>LANIBALOO CREATIONS, LLC d/b/a Simple Sugars,<br><br>                    Defendant. | **DEFENDANT'S NOTICE OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>Docket Case No. 19-CV-1221<br><br>Honorable Judge G. H. Woods. |

PLEASE TAKE NOTICE, that Defendant LANIBALOO CREATIONS, LLC, by and through their undersigned attorneys, shall move before the Honorable Gregory H. Woods at the United States District Court, United States Courthouse, 500 Pearl St., New York, NY 10007-1312, at a time convenient to the Court, for an Order dismissing the Complaint of Plaintiff LINDA SLADE (hereinafter "Motion"). (ECF 1.)

This Motion shall be based on the accompanying Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim for which relief can be granted filed concurrently herewith, and upon such further argument as may be presented prior to or at the time of the hearing on this matter.

/ / /

McCormick, Barstow, Sheppard, Wayte & Carruth LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

1

DEFENDANT'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6)

1   Dated:  April 9, 2019                    McCORMICK, BARSTOW, SHEPPARD,
2                                              WAYTE & CARRUTH LLP
3
4                                       By:
5                                           Jared Gordon
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANT'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6)

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

1

# UNITED STATES DISTRICT COURT

2

## SOUTHERN DISTRICT OF NEW YORK

3

4  LINDA SLADE, Individually and as the
   representative of a class of similarly situated
5  persons,

6            Plaintiff,

7        v.

8  LANIBALOO CREATIONS, LLC
   d/b/a Simple Sugars,
9

            Defendant.
10

Case No. 1:17-CIV-09266-JGK

**DEFENDANT'S MEMORANDUM OF
POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S COMPLAINT PURSUANT
TO FED. R. CIV. P. 12(b)(6)**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

3
DEFENDANT'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6)

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................ 1

II. FACTUAL BACKGROUND ............................................................................. 2

III. LEGAL STANDARD ........................................................................................ 3

IV. LAW AND ARGUMENT .................................................................................. 4

    A. Plaintiff Fails To State A Claim Under The ADA .................................... 4

        1. Defendant's Website Should Not Be Categorized As A "Place Of Public Accommodation" ................................................................. 4

    B. Plaintiff's Lawsuit Violates Defendant's Constitutional Right To Due Process ...... 8

        1. The DOJ's Lack of Standards On Website Accessibility ............................ 8

        2. Requirements of Due Process ..................................................... 9

        3. Without DOJ Guidance On Point, To Hold Defendant Accountable To W3C WCAG 2.1 Standards Is A Violation Of Due Process ..................... 11

            a. W3C WCAG 2.1 Standards Are Arbitrary and Capricious............. 11

    C. Plaintiff's Interpretation of the ADA Violates Defendant's Free Speech Rights ... 12

        1. Plaintiff's Demand for Injunctive Relief is Subject to Strict Scrutiny........ 13

        2. Plaintiff's Interpretation of the ADA Fails Under the Commercial Speech Test ........................................................................ 15

        3. Plaintiff's Interpretation of the ADA Results in an Overbroad Restriction on Free Speech.................................................... 19

    D. Absent The Presence Of Applicable Standards, Plaintiff Fails To State A Cause Of Action Against Defendant And The Court Should Dismiss The Federal And Concurrent State Law Claims............................................. 21

    E. In The Alternative, The Court Should Dismiss Or Stay The Case Pursuant To The Primary Jurisdiction Doctrine ........................................... 21

V. CONCLUSION ................................................................................................ 22

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6)

1

# TABLE OF AUTHORITIES

2

**Page**

3

## CASES

4   *Access Now, Inc. v. Southwest Airlines, Co.*, 227 F. Supp. 2d 1312, 1318-19 (S.D. Fla.
5      2002)................................................................................................................................... 6

6   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ...................................................................... 3

7   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) .............................................. 3

8   *Board of Trustees of State University of New York v. Fox*, 492 U.S. 469, 478 (1989) .................. 18

9   *Botosan v. Paul McNally Realty*, 216 F. 3d 827, 836 (9th Cir. 2000). ............................... 9

10  *Botosan v. Paul McNally Realty,* 216 F.3d 827, 836 *(9th Cir. 2000)* ............................. 11

11  *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973) ......................................................... 19

12  *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008) ....................................... 4

13  *Central Hudson Gas & Elec. Corp. v. Public Service Commission of New York*, 447 U.S.
       557, 561 (1980) ................................................................................................................ 15

14  *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008) ............................... 22

15  *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971)..................................................... 9

16  *Dex Media West, Inc. v. City of Seattle*, 696 F.3d 952, 966 (9th Cir. 2012)................................. 19

17  *Doe v. Mutual of Omaha Ins. Co.*, 179 F.3d 557 (7th Cir. 1999). ..................................... 6

18  *Earll v. eBay, Inc.*, 599 Fed.Appx. 695, 696 (9th Cir. 2015) ............................................. 6

19  *Ellis v. Tribune Television Co.*, 443 F.3d 71, 81-83 (2d Cir. 2006)................................... 3

20  *Florida Bar v. Went For It, Inc.*, 515 US 618, 623 (1995) ............................................. 15

21  *Forbes v. Napolitano*, 236 F.3d 1009, 1011 (9th Cir. 2000)............................................... 9

22  *Ford v. Schering–Plough Corp.*, 145 F.3d 601, 614 (3rd Cir. 1998)................................. 6

23  *Frank G. v. Bd. of Educ. Of Hyde Park*, 459 F.3d 356, 368 (2d Cir. 2006)....................... 5

24  *Gil v. Winn Dixie Stores, Inc.*, 242 F.Supp.3d 1315, 1312 (S.D. Fla. 2017) .................. 6

25  *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) ................................................... 9

26  *Karmel v. Claiborne, Inc.*, No. 99 CIV.3608IWK), 2002 WL 1561126, at *1 (S.D.N.Y. July
       15, 2002 .......................................................................................................................... 21

27

28  *Kidwell v. Florida Commission on Human Relations*, No. 2:16-CV-403-FTM-99CM, 2017
       WL 176897, at *3 (M.D. Fla. Jan. 17, 2017) .................................................................. 6

ii

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Lara v. Cinemark USA, Inc.*, 1998 WL 1048497, at *2 (W.D. Tex. Aug. 21, 1998), rev'd,
207 F.3d 783 (5th Cir. 2000)................................................................................ 10

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 108 (2d Cir. 2012) ............................. 5

*McCarthy v. Dun & Bradstreet Corp.*, 482 U.S. 184, 191 (2d Cir. 2007)....................................... 3

*Miami Herald Pub. Co. v. Tornillo*, 418 U.S. 241, 256 (1974) ..................................................... 13

*Natl. Fedn. of the Blind of Texas, Inc. v Abbott*, 647 F3d 202, 210 ............................................... 19

*Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1010–11 (6th Cir. 1997) ..................................... 6

*Riley v Natl. Fedn. of the Blind of N. Carolina, Inc.*, 487 U.S. 781, 795 (1988) ............... 13, 15, 20

*See Carparts Distribution Center, Inc. v. Automotive Wholesaler's Ass'n of New England,
Inc.*, 37 F.3d 12, 19-20 (1st Cir. 1994)..................................................................... 6

*See United States v. Thirty-Seven (37) Photographs*, 402 U.S. 362. 369 (1971)............................. 7

*See Universal City Studios, Inc. v. Corley*, 273 F.3d 429 ............................................................. 13

*Serv. Emps. Int'l, Inc. v. Dir., Office of Workers Comp. Program,* 595 U.S. 447, 453 (2d
Cir. 2010) ......................................................................................................... 5

*Sorrell v. IMS Health Inc.*, 564 U.S. 552, 565 (2011)......................................................... 14, 16, 17

*Speiser v. Randall*, 357 U.S. 513, 526 (1958) .............................................................................. 20

*U.S. v. AMC Entertainment, Inc.*, 549 F.3d 760, 768 (9th Cir. 2008).......................................... 9

*United States v. Am. Soc'y of Composers, Authors, Publishers*, 627 F.3d 64, 72 (2d Cir.
2010)................................................................................................................... 5

*Vil. of Hoffman Estates v Flipside, Hoffman Estates, Inc.*, 455 US 489, 494 (1982). ................... 19

*Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 637
(1985) ............................................................................................................... 15

**STATUTES**

28 U.S.C. § 1367 ........................................................................................................ 23, 24, 25

42 U.S.C. § 12101 ............................................................................................................... 9, 20

42 U.S.C. § 12182 ................................................................................................................. 4, 19

42 U.S.C. § 12182(a)............................................................................................................. 4, 20

42 U.S.C. §12181(7) .................................................................................................................. 22

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

iii

**TABLE OF AUTHORITIES**
(continued)

**Page**

75 Fed. Reg. 43460 ................................................................................................................ 9

80 Fed. Reg. 77709 .............................................................................................................. 10

82 Fed. Reg. at 60932-60933 ......................................................................................... 18, 20

N.Y. Civil Law § 40 *et seq.*, .................................................................................................. 1

N.Y. Exec. Law § 290 *et seq* ................................................................................................ 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

DEFENDANT'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6)

Defendant, LANIBALOO CREATIONS, LLC d/b/a Simple Sugars ("Defendant" or "LC"), submits this Memorandum of Points and Authorities ("Memorandum") in Support of its Motion to Dismiss Plaintiff LINDA SLADE's ("Plaintiff" or "Slade") Complaint pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6).  In the alternative, Defendant requests that Plaintiff's Complaint be stayed pending the Department of Justice ("DOJ")'s promulgation of private website accessibility regulations governing websites of non-governmental providers of public accommodations.

## I.   __INTRODUCTION__

Plaintiff has filed a Complaint-Class Action against Defendant claiming its website, www.simplesugarsskincare.com (the "Website"), violates the American Disabilities Act ("ADA"), New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.,* and the New York State Civil Rights Law, N.Y. Civil Law § 40 *et seq.*, because it does not comply with the World Wide Web Consortium's ("W3C") published Version 2.1 of the Web Content Accessibility Guidelines ("WCAG") and remove access barriers to the blind and visually impaired. See Complaint ¶ 4-5, 11.

Plaintiff's claims fail because Plaintiff cannot establish the Website violates the American with Disabilities Act ("ADA"). First, the Website is not a "public accommodation" or "place of public accommodation" because there are no physical locations in which the Website provides or supplies access to, there is an insufficient nexus to a place of public accommodation. Second, because there are no official regulations on what the ADA requires for website accessibility, Plaintiff cannot establish the Website violates the ADA. Moreover, Plaintiff's claims violate fundamental principles of due process. Without such guidance, Defendant cannot possibly comply when there are no intelligible standards for ADA website accessibility. Lastly, Plaintiff's claims fail because the ADA, as applied to websites, is a violation of Defendant's free speech rights under the First Amendment.

Essentially, Plaintiff seeks to force compliance with unofficial and voluntary website accessibility guidelines developed by a completely non-governmental organization, and adopt WCAG

DEFENDANT'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6)

with the same force and effect of law, even though the federal agency responsible for regulating the Internet – the Department of Justice ("DOJ") – has recently scrapped its years-long promise to issue regulations on website accessibility.[1]

Therefore, this Court should dismiss this case for failure to state a claim pursuant to Fed. R. Civ. P 12(b)(6). Likewise, the Court should decline to exercise supplemental jurisdiction over Plaintiff's pendant claims and dismiss Plaintiff's claims under New York law. In the alternative, the Court should dismiss or stay this case under the primary jurisdiction doctrine until the DOJ promulgates website accessibility regulations.

## II.    FACTUAL BACKGROUND

LC sells all-natural skin care products, including moisturizers and related accessories, throughout the United States through its website at www.simplesugarsskincare.com (the "Website"). Complaint ¶¶ 4, 19. Plaintiff alleges she is "a visually–impaired and legally blind person who requires screen-reading software to read website content," including the content on Defendant's Website. Complaint ¶¶ 2, 17. Further, Plaintiff alleges the Website violates the ADA because it is not equally accessible to blind and visually-impaired consumers by failing to comply with guidelines set forth by W3C's WCAG (2.1). Complaint ¶ 11, 24. Plaintiff brings this lawsuit on behalf of herself and others similarly situated alleging that Defendant's Website is not accessible to her or others who are visually-impaired. Complaint ¶¶ 4-5. On February 11, 2019, Plaintiff filed a class action on behalf of herself and others similarly-situated. *See* Complaint. Plaintiff seeks injunctive relief; declaratory relief; compensatory and statutory damages pursuant to New York State Human Rights Law and City Law; attorney's fees, expenses, and costs; and pre and post-judgment interest, based on Plaintiff's alleged attempts to use Defendant's Website.

Plaintiff and her counsel have filed numerous, near-identical lawsuits against other businesses

---

[1] See Office of Information and Regulatory Affairs, Current 2017 Inactive Actions List. https://www.reginfo.gov/public/jsp/eAgenda/InactiveRINs_2017_Agenda_Update.pdf.

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

2

DEFENDANT'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6)

1  in which similar allegations are made without specificity. Notably, Plaintiff claims to have visited the

2  Website on several occasions but the Complaint does not state any specific dates and/or times when

3  she was unable to access Defendant's Website and vaguely refers to a Valentine's Sampler product.

4  *See* Complaint ¶¶ 10, 26. Likewise, Plaintiff vaguely lists the alleged barriers that she encountered on

5  the Website, as opposed to identifying specific problems with certain images, links, forms, or other

6  issues. *See* Complaint ¶ 30.

7  **III.    LEGAL STANDARD**

8          To survive a motion to dismiss under Fed. R. Civ. P 12(b)(6), a complaint "must contain

9  sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

10  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

11  570 (2007)). "In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a

12  claim upon which relief can be granted, we accept as true all factual statements alleged in the

13  complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun &*

14  *Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). The plausibility standard is met only where the

15  facts alleged enable the court to draw the reasonable  inference that the defendant is liable for the

16  misconduct alleged. *Simpson v. Sanderson Farms, Inc*. 744 F.3d 702, 708 (11th Cir. 2014). "Where a

17  complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the

18  line between possibility and plausibility of entitlement to relief. *Iqbal*, 556 U.S. at 678. A mere

19  recitation of the elements of a cause of action will not due and the plaintiff "must offer in support of

20  its claim sufficient factual matter, accepted as true, to raise a right to relief above the speculative level.

21  *Simpson*, 744 F.3d at 708 (quoting *Twombly*).

22          The assumption of truth does not apply to legal conclusions. *Davis v. Vermont, Dep't of*

23  *Corrections*, 868 F.Supp.2d 313, 321 (D.Vt. 2012). As website accessibility guidelines have yet to be

24  promulgated by the DOJ, an issue within the DOJ's purview, this Court has authority to dismiss

25  without prejudice or stay this case under the primary jurisdiction doctrine. *See, e.g., Ellis v. Tribune*

26  *Television Co.*, 443 F.3d 71, 81-83 (2d Cir. 2006) (finding district court erred in not referring a matter

27  to an agency with primary jurisdiction over the issue).

28

MCCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

3
DEFENDANT'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6)

1  IV.   **LAW AND ARGUMENT**

2     A.   **Plaintiff Fails To State A Claim Under The ADA**

3         Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis

4  of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or

5  accommodations of any place of public accommodation by any person who owns, leases (or leases to),

6  or operates a place of public accommodation." 42 U.S.C. § 12182(a).

7         The ADA defines discrimination as "a failure to take such steps as may be necessary to ensure

8  that no individual with a disability is excluded, denied services, segregated or otherwise treated

9  differently than other[s]…" 42 U.S.C. § 12182(a)(2)(A)(iii). "To state a claim under Title III [of the

10  ADA], [a plaintiff] must allege (1) that she is disabled within the meaning of the ADA; (2) that

11  defendants own, lease, or operate a place of public accommodation; and (3) that defendants

12  discriminated against her by denying [Plaintiff] a full and equal opportunity to enjoy the services

13  defendants provide." *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008).

14        1.   **Defendant's Website Should Not Be Categorized As A "Place Of Public Accommodation"**

15

16        Plaintiff's Complaint contends that the Website is a "public accommodation", a place or

17  provider of public accommodation, or a good, service, facility, privilege, advantage, or

18  accommodation of a place of public accommodation as those terms are defined by the ADA and

19  related regulations. *See* Complaint, ¶58, 42 U.S.C. § 12182(a)(2)(A)(iii).

20        The statute defines "public accommodation" for purposes of the ADA as follows:

21             (A) an inn, hotel, motel, or other place of lodging, except for an
                establishment located within a building that contains not more than

22              five rooms for rent or hire and that is actually occupied by the
                proprietor of such establishment as the residence of such proprietor;

23              (B) a restaurant, bar, or other establishment serving food or drink;
                (C) a motion picture house, theater, concert hall, stadium, or other

24              place of exhibition or entertainment;
                (D) an auditorium, convention center, lecture hall, or other place of

25              public gathering;
                (E) a bakery, grocery store, clothing store, hardware store, shopping

26              center, or other sales or rental establishment;
                (F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel

27              service, shoe repair service, funeral parlor, gas station, office of an
                accountant or lawyer, pharmacy, insurance office, professional office

28

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

4

DEFENDANT'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6)

of a health care provider, hospital, or other service establishment;
(G) a terminal, depot, or other station used for specified public transportation;
(H) a museum, library, gallery, or other place of public display or collection;
(I) a park, zoo, amusement park, or other place of recreation;
(J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;
(K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and
(L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation. 42 U.S.C. § 12181(7).

Notably, nowhere in the definition of "public accommodation" covers "websites." Instead, every place listed as a public accommodation in 42 U.S.C. § 12181 is a **physical** location.

Clearly,  the ADA was not drafted with the Internet nor websites in mind.  Websites did not exist until 1993, two years after the ADA was adopted. Other federal courts have considered whether commercial websites qualify as places of public accommodation under the ADA.  However, the Second Circuit has yet to take a position on the issue. Other district courts within the Second District have analyzed the issue, but a "decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." 18 Moore's Federal Practice § 134.02[1][d].

For statutory construction, the Court must first determine whether the language at issue has a "plain and unambiguous meaning with regard to the particular dispute in the case." *United States v. Am. Soc'y of Composers, Authors, Publishers*, 627 F.3d 64, 72 (2d Cir. 2010). If a court can ascertain the plain meaning of the statutory text by examining the context of the statute as a whole, it need not proceed any further, but if the text's meaning is ambiguous then a court may consult other sources, including the statute's legislative history, its broader context, and primary purpose. *Louis Vuitton Malletier S.A. v. LY USA, Inc*., 676 F.3d 83, 108 (2d Cir. 2012); *Serv. Emps. Int'l, Inc. v. Dir., Office of Workers Comp. Program,* 595 F.3d 447, 453 (2d Cir. 2010).  The Court's charter is to interpret the statute in "a way that avoids absurd results." *Frank G. v. Bd. of Educ. Of Hyde Park*, 459 F.3d 356, 368 (2d Cir. 2006).

Courts in the First and Seventh Circuits have taken a broad approach and expanded the

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

1    definition to include non-physical locations. *See Carparts Distribution Center, Inc. v. Automotive*

2    *Wholesaler's Ass'n of New England, Inc*., 37 F.3d 12, 19-20 (1st Cir. 1994) (holding the "ambiguity,

3    considered together with agency regulations and public policy concerns, persuades us that the phrase

4    is not limited to actual physical structures."); *Doe v. Mutual of Omaha Ins. Co*., 179 F.3d 557 (7th Cir.

5    1999).

6          On the other hand, the Third, Sixth, Ninth Circuits hold that "places of public accommodation"

7    are *physical locations* based on the statutory definition, such that goods and services provided through

8    a website must have a sufficient nexus to a physical place for purposes of the ADA. *See Weyer v.

9    Twentieth Century Fox Film Corp*., 198 F.3d 1104, 1115 (9th Cir. 2000) ("The principle of *noscitur a

10   sociis* requires that the term, 'place of accommodation,' be interpreted within the context of the

11   accompanying words, and this context suggests that some connection between the good or service

12   complained of and an actual physical place is required."); *Earll v. eBay, Inc.*, 599 Fed.Appx. 695, 696

13   (9th Cir. 2015) (the term "place of public accommodation" requires some connection between the

14   good or service alleged to be discriminatory and a physical place); *Ford v. Schering–Plough Corp*.,

15   145 F.3d 601, 614 (3rd Cir. 1998) (holding "public accommodation" and the list of examples in the

16   statute did not refer to non-physical access); *Parker v. Metro. Life Ins. Co.,* 121 F.3d 1006, 1014 (6th

17   Cir. 1997) ("The clear connotation of the words in [the statute] is that a public accommodation is a

18   physical place.").

19         Courts in the Eleventh Circuit have followed suit and uniformly hold that "the ADA does not

20   apply to a website that is wholly unconnected to a physical location." *Gil v. Winn Dixie Stores, Inc.,*

21   242 F.Supp.3d 1315, 1312 (S.D. Fla. 2017); *see Access Now, Inc. v. Southwest Airlines, Co.*, 227 F.

22   Supp. 2d 1312, 1319 (S.D. Fla. 2002) ("To fall within the scope of the ADA as presently drafted, a

23   public accommodation must be a physical, concrete structure. To expand the ADA to cover "virtual"

24   spaces would be to create new rights without well-defined standards."); *Kidwell v. Florida Comm'n

25   on Human Relations*, No. 16-403, 2017 WL 176897, *3 (M.D. Fla. Jan. 17, 2017) (rejecting claim

26   based on plaintiff failing to demonstrate Busch Gardens' or SeaWorld's online website prevents

27   access to a specific, physical, concrete space.). Even just recently in the Fifth Circuit, a district court

28   held that "while websites may be affiliated with brick-and-mortar businesses that are places of

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

6

DEFENDANT'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6)

1   accommodation, that does not render the businesses' website themselves places of accommodation"

2   and requiring a distinct physical place of business. *Zaid v. Smart Financial Credit Union*, Case No. H-

3   18-1130 (S.D. Tex. Jan. 24, 2019).

4        In this case, the Court should follow the analysis in the Third, Sixth, and Ninth circuits because

5   the statute is unambiguous. By looking at the statutory text and examining the statute's context, the

6   places of public accommodation listed in the definition are all *locations able to be accessed*

7   *physically*. Applying *ejusdem generis*, which holds when a general term follows a list of particular

8   items, the general term only applies to things similar to the particular items, reaches the same result.

9   Finding the statute is "ambiguous" to permit the use of a more expansive definition, eliminating any

10  physical location connection, would effectively re-write the statute and runs contrary to the purposes

11  of judicial review. *See United States v. Thirty-Seven (37) Photographs*, 402 U.S. 362. 369 (1971)

12  (Supreme Court refused to modify statute and ordinances when constitutionality of construction was

13  raised because "it is up to Congress, not this Court, to rewrite the statute.").

14       Here, Plaintiff alleges that the Defendant's "denial of full and equal access to its website, and

15  therefore denial of its products and services offered, and in conjunction with its physical locations, is a

16  violation of Plaintiff's rights under the American with Disabilities Act." Complaint ¶ 4. But,

17  Defendant's Website "is a commercial website that offers products and services for ***online sale***. The

18  online store allows the user to browse skincare products, make purchases, and perform a variety of

19  other functions." Complaint ¶ 26 (***emphasis added***).  Nowhere in the Complaint has Plaintiff alleged

20  by any stretch that the Defendant or the Website has any connection to any actual brick-and-mortar

21  stores or any other places of public accommodation that the Defendant owns, leases, or operates as

22  required by the ADA. ***In fact, the opposite is true in that the Plaintiff has alleged, and admits, that***

23  ***Defendant is an online retailer which sells its products online.*** See Complaint, ¶ 19. Also, Plaintiff

24  has not alleged she has visited, was unable to visit, or was otherwise deterred from visiting a physical

25  retail location to purchase Defendant's products. Plaintiff alleges that due to the Website's

26  inaccessibility, blind persons would have to "make purchases at traditional brick-and-mortar retailers"

27  and that she only "intended to make an online purchase" on the Website. See Complaint, ¶¶ 10, 38.  In

28  other words, Plaintiff has not alleged the Website deprived her of full and equal access to the

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

DEFENDANT'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6)

privileges and services provided by Defendant through a physical public accommodation such as a retail store. A bare assertion that there are physical stores, without more, is insufficient factual matter to rise beyond the speculative level to establish an adequate nexus between the Website and a physical store, much less that the Defendant owned, leased, or operated such physical store. *See Young v. Facebook, Inc.* 790 F. Supp.2d 1110, 1115 (complaint failed to adequately plead nexus to a physical location where plaintiff alleged the defendant sold its gift cards in various retail stores across the country but failed to allege the defendant owned, leased, or operated those stores). Defendant has not alleged any particular facts in its complaint to identify a retail store or other physical public accommodation to satisfy this element of an ADA claim, such as an address, an intersection, or even a city in which such a physical retail store is located. Mere conclusory pleading is not enough under *Iqbal* and *Twombly*. Leave to amend would be futile as the Defendant does not operate, lease, or own any brick-and-mortar retail stores or other places of public accommodation under the ADA.

Accordingly, Plaintiff fails to state a claim for relief because Plaintiff fails to establish that the Website is a "place of public accommodation" which prevented her from enjoying the goods and services connected to a specific, physical, concrete space sufficient to bring the Website within the purview of the ADA. Thus, the Complaint should be dismissed pursuant to Fed. R. Civ. P 12(b)(6).

**B.** **Plaintiff's Lawsuit Violates Defendant's Constitutional Right To Due Process**

**1.** **The DOJ's Lack of Standards On Website Accessibility**

The Americans with Disabilities Act was enacted in 1990, when the Internet as we know it did not exist. And yet, despite the pervasiveness of the Internet today, neither the ADA, nor regulations promulgated by the DOJ with respect to the ADA, presently address website accessibility. See 42 U.S.C. § 12101 *et seq.*

On July 26, 2010, the DOJ issued an advanced notice of proposed rulemaking ("ANPRM"), Nondiscrimination on the Basis of Disability; Accessibility of Web Information and Services of State and Local Government Entities and Public Accommodations, 75 Fed. Reg. 43460 (to be codified at 28 C.F.R. pt. 36). Within the same, the DOJ admitted that "a clear requirement that provides the disability community consistent access to Web sites and covered entities clear guidance on what is required under the ADA does not exist." ANPRM, 75 Fed. Reg. at 43464. And while in December 2015 the

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

DEFENDANT'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6)

DOJ announced that it expected to publish its notice of proposed rulemaking on Title III website accessibility standards in 2018 (*see* DOJ – Fall 2015, Statement of Regulatory Priorities, 80 Fed. Reg. 77709, 77807 (Dec. 15, 2015), the DOJ has scrapped its plans to address the same as of December 26, 2017 (website accessibility regulations moved to the "inactive" regulatory agenda in summer 2017 and then withdrawn in December 2017).[2] So not only has the DOJ failed to issue any website accessibility regulations under the ADA, it is clear that such regulations are years away from promulgation.

### 2.    Requirements of Due Process

"Due process requires that the government provide citizens and other actors with sufficient notice as to what behavior complies with the law. Liberty depends on no less." *U.S. v. AMC Entertainment, Inc.*, 549 F.3d 760, 768 (9th Cir. 2008); *see Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972); *Forbes v. Napolitano*, 236 F.3d 1009, 1011 (9th Cir. 2000) ("The due process clause ... guarantees individuals the right to fair notice of whether their conduct is prohibited by law"). A statute is vague not when it prohibits conduct according to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all. *Botosan v. Paul McNally Realty*, 216 F. 3d 827, 836 (9th Cir. 2000). When there is no standard of conduct specified, "men of common intelligence must necessarily guess at its meaning." *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971).

The Ninth Circuit's opinion in *AMC Entertainment, supra*, 549 F.3d at 768 is entirely on point. In *AMC Entertainment,* the Ninth Circuit addressed whether the ADA required theater owners to retroactively incorporate a comparable viewing angle requirement in movie theaters.  549 F.3d at 768 – 70. This necessitated the interpretation of a regulation that required "lines of sight comparable to those for members of the general public," because the regulation was unclear.  The regulation was unclear whether "lines of sight" simply referenced an unobstructed view of the screen or whether that

--------------------------

[2] See Footnote 1, *supra*.

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

DEFENDANT'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6)

1    required comparable viewing angles. *Id.*

2        This issue was litigated in courts throughout the country; however, the first time that the DOJ

3    announced its position on the issue was in an amicus brief in the District Court for the Western

4    District of Texas in a matter entitled *Lara v. Cinemark USA, Inc.*, 1998 WL 1048497, at *2 (W.D.

5    Tex. Aug. 21, 1998), rev'd, 207 F.3d 783 (5th Cir. 2000). *Id.* Ultimately, the Ninth Circuit announced

6    in another opinion that the regulation required comparable viewing angles for disabled patrons (the

7    Fifth Circuit *Lara* Court disagreed). *Id.* As the courts tackled the issue, the DOJ brought a lawsuit

8    against AMC arguing that AMC was required to retrofit several theaters, including those built before

9    the DOJ announced its interpretation of the regulation in the *Lara* amicus brief. *See id.*

10       The Ninth Circuit reversed the District Court's injunction on the grounds that defendants were

11   entitled to know what the law required of them. *Id.* The Ninth Circuit found that the imposition of

12   vague accessibility standards would violate a defendant's right to due process because "the text of

13   4.33.3 did not even provide our colleagues, armed with exceptional legal training in parsing statutory

14   language, a 'reasonable opportunity to know what is prohibited' — let alone those of 'ordinary

15   intelligence.'" *Id.*

16       The Ninth Circuit has recently recognized that the ADA's statutory obligation of providing

17   "full and equal opportunity" is sufficient notice for Due Process Clause purposes. *Robles v. Domino's

18   Pizza LLC*, 913 F.3d 898, 909.[3] But the *Robles* court expressly noted that the complaint in that case

19   did not base liability on WCAG guidelines. That made it entirely different from the instant case, in

20   which the allegations of ADA violations are substantially based on alleged violations of WCAG 2.1.

21   In ¶ 24, the Complaint describes WCAG 2.1 as "the standard guidelines for accessibility", and then

22   notes that the WCAG 2.1 recommends "adding invisible alt-text to graphics, ensuring that all

23   functions can be performed using a keyboard and not just a mouse, ensuring that image maps are

24   accessible, and adding headings so that blind persons can easily navigate the site." Complaint ¶24.

25   _____

26

27   [3] *Robles* is solely persuasive authority for this Court, and the Court may choose not to follow it.

28

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

DEFENDANT'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6)

The Complaint then alleges this same list of alleged violations of the ADA, based on the WCAG 2.1, in ¶¶ 30 – 38.  This Complaint, unlike the complaint in the *Robles* case, is entirely reliant on purported violations of WCAG 2.1 by Defendant.

> **3.     Without DOJ Guidance On Point, To Hold Defendant Accountable To W3C WCAG 2.1 Standards Is A Violation Of Due Process**

> > a.     <u>W3C WCAG 2.1 Standards Are Arbitrary and Capricious</u>

The originally WCAG 2.0 "standard" to which Plaintiff would hold Defendant is a set of vague and mercurial guidelines published by a nongovernmental organization. WCAG 2.0 contains three conformance levels: A, AA, and AAA. These performance levels define *different* ranges of accessibility open to interpretation and satisfaction by many different code permutations. ***However, WCAG guidelines were never intended to be law or regulations.*** No public review or rulemaking procedure was undertaken for the WCAG. The consortium that publishes the WCAG is free to amend or change this guidance at any time, and has in fact done so several times. The latest version, WCAG 2.1 published June 5, 2018, shares the same ill-constructed issues as WCAG 2.0, in that it was published without public comment and review, and without the rigors of agency rulemaking. Even more confusing, W3C provides that the two versions are "both existing standards" and "WCAG 2.1 does not deprecate or supersede WCAG 2.0."[4] Without such process, WCAG 2.1 is not reliable as a reflection of congressional intent or a judicial guidepost for website accessibility standards. As such, the law, as it currently stands, "fails to articulate comprehensible standards to which a person's conduct must conform." *See Botosan v. Paul McNally Realty,* 216 F.3d 827, 836 *(*9th Cir. *2000)* (observing ADA would be vague if "so indefinite in its terms that it fails to articulate comprehensible standards to which … to conform.").

Assuming, *arguendo,* that  businesses are on notice that the ADA applies to websites, without articulated guidelines, business owners such as Defendant are left to guess at what is actually required

---

[4] See W3C, Web Content Accessibility Guidelines (WCAG) Overview (June 22, 2018), at https://www.w3.org/WAI/standards-guidelines/wcag/.

McCormick, Barstow, Sheppard, Wayte & Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

DEFENDANT'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6)

for compliance with the ADA. The lack of guidelines leads to inconsistent rulings and results, which produce no clear standards for reasonable compliance to the ADA's mandate. The ADA's general mandate is not simply an imprecise standard, it is practically incomprehensible as how the Defendant, and others similarly situated, can actually comply. At the very least, Plaintiff's interpretation of the ADA as requiring adherence to the WCAG 2.1 standards, as advanced in the Complaint (¶¶ 24 and 38, and by implication in ¶¶ 30-37), must fail as a matter of due process. Plaintiff alleges that the WCAG 2.1 are "well-established guidelines for making websites accessible to blind and visually-impaired persons" and that "many Courts have also established WCAG 2.1 as the standard guideline for accessibility." See Complaint ¶ 24. But no court has ever determined that WCAG 2.1 was the standard guideline for accessibility. (*See Robles v. Domino's Pizza LLC*, 913 F.3d 898 (plaintiff requested injunctive relief using WCAG 2.0); *Access Now, Inc. v. Blue Apron, LLC*, 2017 WL 5186354 (plaintiff requested court compel defendant to implement WCAG 2.0 AA). Courts have shown hesitance to utilize WCAG guidelines as the measure for compliance to the ADA. *See Carroll v. FedFinancial Federal Credit Union*, 324 F.Supp.3d 658, 668 (E.D. Va. June 25, 2018) (cause of action alleged violations of ADA, not of WCAG, and therefore, "the Court need not, and does not, apply private sector W3C guidelines to its analysis of Defendant's compliance with ADA standards"); *Brintley v. Aeroquip Credit Union*, 321 F.Supp.3d 785, 794 (E.D. Mich. July 20, 2018) ("Plaintiff is simply seeking an order requiring Defendant to comply with Title III; she is not dictating how Defendant must comply with the statute"). It is this exact lack of consistent application of WCAG 2.0, WCAG 2.1, or other voluntary guideline, that deprives the Defendant of fair notice.

Regardless of the merits (or lack thereof) of WCAG standards, until the DOJ issues an articulated accessibility standard via a properly promulgated regulation, a finding that a private entity violates the ADA solely based on unofficial technical standards that have no force of law flagrantly violates Defendant's due process rights.

**C.**     **Plaintiff's Interpretation of the ADA Violates Defendant's Free Speech Rights**

Plaintiff's causes of action in her Complaint are entirely predicated on Defendant's alleged failure to make the Website accessible to Plaintiff and similarly situated people according to the non-regulatory, privately-determined WCAG standards. However, the contents of the Website, including

12

text, images, design, and the underlying presentation language code (e.g. HTML, CSS) that allows web browsers to display the contents of the Website, are a means of protected expression and speech by Defendant. *See Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 445-47 ("Communication does not lose constitutional protection as "speech" simply because it is expressed in the language of computer code…computer programs are not exempted from the category of First Amendment speech simply because their instructions require use of a computer."). The Complaint alleges Defendant violated the ADA and similar New York laws by not including certain other content in the Website, for example, alternative text and link labels. Complaint ¶ 30.  Plaintiff prays for injunctive relief to compel the Defendant to include such content in its Website, which constitutes compelled speech in violation of Defendant's, and third parties', freedom of speech.

### 1.      Plaintiff's Demand for Injunctive Relief is Subject to Strict Scrutiny

The injunctive relief sought by Plaintiff would compel Defendant to engage in certain non-neutral speech, such as by adding alternative text, image maps, and link labels, among many other instances of forced speech required by judicial adherence to WCAG 2.1.  Complaint ¶30-34.

The U.S. Supreme Court has held that "[m]andating speech that a speaker would not otherwise make necessarily alters the content of the speech."  *Riley v Natl. Fedn. of the Blind of N. Carolina, Inc.,* 487 U.S. 781, 795 (1988).  Indeed, the Supreme Court has been clear that freedom of speech encompasses "both what to say and what not to say." *Riley*, *supra*, 487 U.S. at 796–97.  Compelled publication of content is subject to the First Amendment and is generally prohibited, even if it does not modify the content the speaker intends to convey and merely adds to it. *Miami Herald Pub. Co. v. Tornillo*, 418 U.S. 241, 256 (1974).  The First Amendment's restrictions on compelled speech apply to both compelled fact and compelled opinion. *Riley*, *supra*, 487 U.S. at 797-798.

Plaintiff seeks to impose specific kinds of compelled speech content on Defendant, particularly by including prompting and alternative text.  Complaint ¶ 64.  Plaintiff demands that Defendant must not use speech on their Website that is inaccessible to Plaintiff because it lacks certain content, based on Plaintiff's unofficial standards, and that the Defendant must use speech on their Website that is accessible to Plaintiff because it includes certain content, again based only on Plaintiff's unofficial standards.  In essence, the Complaint seeks that the Court order that Defendant not engage in one type

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

13

DEFENDANT'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6)

of speech on the Website and compel Defendant to instead engage in another type of speech.  That is not a content-neutral speech restriction, but rather it is a restriction on the content of Defendant's speech, even if it might not seek to compel a specific viewpoint.  *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 565 (2011) (list of various examples of similar content discrimination disapproved by the U.S. Supreme Court).  Since the ADA, by its very language, only applies to places of "public accommodation," and not to all speakers or even all website publishers, its application as to Defendant is also aimed only at certain speakers.  Plaintiff's requested interpretation of law and prayed-for speech restrictions would therefore require the Court to discriminate on the basis of content and on the basis of the speaker.

Specifically, Plaintiff alleges providing alt-text is necessary to comply with the ADA. *See* Complaint ¶ 31. Such  mandate would literally require Defendant to engage in expression, in the form of the alt-text label, that Defendant has previously chosen not to express.  Likewise, compelling Defendant to label fields that are not currently labeled on Defendant's website also clearly requires Defendant to engage in a particular expression for each such field. Complaint ¶32.  Further, Plaintiff alleges Defendant must provide an image map with alt-text for its website, which would require Defendant to engage in expression for images that are not normally labeled and have no text expression. Complaint ¶34.  Defendant's other alleged failures to comply with the WCAG 2.1 (and in Plaintiff's interpretation, the ADA), such as a "lack of navigation links", keyboard accessible navigation, and inability for screen readers to recognize the shopping cart pop-up window (Complaint ¶¶ 36, 37 and 35, respectively), would require Defendant to engage in particular expression on its webpage to remedy. Plaintiff's interpretation of the ADA  requires these forms of expression on Defendant's Website, which are the very essence of compelled speech.

The Supreme Court has already held that even where such compelled speech is consistent with the speaker's existing expression, it may not be compelled. *Miami Herald, supra,* 418 U.S. at 256. Requiring Defendant to create and provide alt-text, link labels, image maps, navigation links, and alter its shopping cart pop-up window might be consistent with the general content that Defendant seeks to convey on its website – indeed such changes might seem banal and benign at first glance – but nevertheless the *Miami Herald* court made clear that such speech is still compelled speech.

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

DEFENDANT'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6)

Content-based and speaker-based restrictions on speech require "heightened scrutiny," even for commercial speech. *Id.* at 571. The U.S. Supreme Court has held that laws compelling particular speech are always content-discriminatory, thus mandating strict scrutiny. *Riley*, *supra*, 487 US at 795. Based on above, Plaintiff's interpretation of the ADA amounts to compelled speech that cannot satisfy strict scrutiny.

**2.      Plaintiff's Interpretation of the ADA Fails Under the Commercial Speech Test**

Defendant acknowledges that the Website contains information about the brand and its products and offering those products for sale, and thus some content may be characterized as commercial speech. However, Plaintiff's demand to compel and/or restrict non-content-neutral aspects creates sweeping violations of the commercial speech test.

Commercial speech has been characterized as "expression related solely to the economic interests of the speaker and its audience." *Central Hudson Gas & Elec. Corp. v. Public Service Commission of New York*, 447 U.S. 557, 561 (1980). Courts have similarly found speech proposing a commercial transaction (e.g. the purchase or sale of a good or service) to be commercial speech. (*Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 637 (1985). But even if the Plaintiff's proposed speech restrictions were considered solely in the context of commercial speech, the Court is obligated to reject them.

Merely because speech is commercial does not mean that it loses all Constitutional protection. The U.S. Supreme Court has repeatedly "rejected the 'highly paternalistic' view that government has complete power to suppress or regulate commercial speech." *Central Hudson*, *supra,* 447 U.S. at 562. For commercial speech that is not false or misleading (and the Complaint does not allege the Website content is false or misleading), the Supreme Court applies the *Central Hudson* test: (1) whether the speech "concern[s] lawful activity," (2) "whether the asserted governmental interest is substantial," (3) "whether the regulation directly advances the governmental interest asserted," and (4) "whether it is not more extensive than is necessary to serve that interest." *Central Hudson*, *supra*, 447 U.S. at 566. The *Central Hudson* test is usually characterized as an intermediate scrutiny standard. *Florida Bar v. Went For It, Inc.*, 515 US 618, 623 (1995). Application of the *Central Hudson* test to the facts

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

15

DEFENDANT'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6)

1   as alleged in the Complaint, that is in an as-applied challenge, will show that the speech restrictions

2   proposed by Plaintiff (Complaint, ¶¶ 24 and 30-38), including for injunctive relief (Complaint, Prayers

3   (a) and (b)), are an impermissible restriction on commercial speech under the *Central Hudson* test.

4       The first prong of the *Central Hudson* test permits governments to regulate speech that does

5   not concern lawful activity, i.e. speech for activities that are illegal.  Here, the Website advertises and

6   allows the online purchase of natural skin care products and accessories. Complaint ¶19. U.S. and

7   New York law generally permits the sale of such goods.[5]   Defendant's speech on the Website

8   concerns a lawful activity.

9       The second prong of the *Central Hudson* test depends on whether the government's interest is

10  "substantial."  Defendants assumes, *arguendo,* for purposes of this motion that the federal and New

11  York interests in ensuring access to public accommodations for the disabled are substantial interests.

12  Defendant firmly believes in and strongly supports the rights of the disabled, and affirms its

13  commitment to the goals of the ADA.  But such goals, however worthwhile, should not come at the

14  cost of Defendant's, or any citizen's, due process or free speech rights.

15      The speech restrictions as set forth in the Complaint violate the third prong of the *Central*

16  *Hudson* test because the ADA and the New York laws upon which Plaintiff's claims are based do not

17  "directly advance" the accessibility of websites *at all*.  "Rules that burden protected expression" are

18  impermissible when they are "too broad to protect speech."  *Sorrell*, *supra*, 564 U.S. at 574.

19      The U.S. Department of Justice repeatedly considered and failed to adopt regulations expressly

20  regulating commercial websites under the ADA.  The 2010 Regulations for Title III of the ADA,

21  which apply to private entities operating places of public accommodation, do not even contain the

22  word "website." 28 C.F.R. 36 *et seq.*  The Department of Justice withdrew its previously announced

23  intent to regulate websites constituting public accommodations on December 26, 2017.  82 Fed. Reg.

24

25

26  [5] Defendant acknowledges there are restrictions placed on labelling of their goods and the like.  Those

27  restrictions are not at issue in this case.

28

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

DEFENDANT'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6)

1    at 60932-60933. The Complaint states without a statutory or regulatory basis that the Website has

2    violated the ADA by failing to incorporate "well-established guidelines", in other words the WCAG

3    2.1, including but not limited to ensuring adequate prompting and alternative text. *See* Complaint, ¶¶

4    24, 30-38. But just as the Department of Justice has not adopted regulations applying the ADA to

5    websites, it has not adopted regulations specifically applying any version of WCAG to websites.

6        Similarly, the State of New York has not adopted any laws or regulations that expressly

7    regulate the accessibility of websites for public accommodations.  New York's Office of Information

8    Technology Services adopted a policy on website access for state agencies that does not apply to

9    private      sector      public      accommodations.      *NYS-P08-005*,      available      at

10   https://its.ny.gov/sites/default/files/documents/nys_p08-005_memo_09102010.pdf. New York City

11   also adopted a law requiring accessibility for its various municipal agencies.  New York City Law No.

12   2016/026.  Neither of these New York or municipal laws purport to regulate the websites of private

13   parties such as Defendant.

14       At most, the ADA and the New York laws that form the basis of Plaintiff's claims could be

15   said to indirectly regulate speech on websites, like the Website, by the ADA's broad obligations on

16   operators of public accommodations.  *See e.g.* 42 U.S.C. § 12182.  That is not a close enough fit for

17   intermediate scrutiny, as is required for commercial speech, let alone for strict scrutiny due content-

18   and speaker-discriminatory speech restrictions.  As the U.S. Supreme Court held in *Sorrell*, a

19   restriction that is "too broad" is an impermissible restriction on commercial speech.  *Sorrell*, *supra*,

20   564 U.S. at 574.  Because neither the Department of Justice nor the State of New York has adopted

21   *any* direct regulation specifically governing accessibility for the disabled applicable to websites for

22   public accommodations, much less a regulation that "directly advances" the governments' interests in

23   promoting accessibility to the disabled, the speech restrictions as set forth in the Complaint must fail

24   under the third prong of the *Central Hudson* test, under intermediate scrutiny.

25       For similar reasons, the proposed speech restrictions in the Complaint violate the fourth prong

26   of the *Central Hudson* test, because the Plaintiff's proposed speech restrictions are more extensive

27   than are necessary to serve the governmental interest.  The Supreme Court upholds commercial speech

28   restrictions only "so long as they are 'narrowly tailored' to serve a significant governmental interest."

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

17
DEFENDANT'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6)

*Board of Trustees of State University of New York v. Fox*, 492 U.S. 469, 478 (1989). The government must have engaged in careful consideration of the goal, and of the costs to free speech to achieve that goal. *Id.* at 480. The government may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals. *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989). Here, the relevant governmental bodies have not engaged in careful consideration of limits on commercial speech or compelled commercial speech on websites, or the tradeoffs to the freedom of speech of operators of websites like Defendant's that such restrictions would impose; **they have engaged in no formal consideration of limits on commercial speech on websites at all.** Yet, Plaintiff seeks to impose voluntary, private organization guidelines that are curated without the required consideration by the federal or state government of those tradeoffs.

To the extent the relevant governments have engaged in careful consideration as to the imposition of compelled speech to achieve website accessibility, their inaction evidences **the Department of Justice and the State of New York have chosen not to compel such speech.** The Department of Justice affirmatively withdrew its intent to regulate website accessibility, which may indicate a judgment by the Department of Justice that the free speech costs (possibly along with other costs) outweighed accessibility interests. 82 Fed. Reg. at 60932-60933.

Nor is it plausible to argue that the law as presently written is narrowly tailored. Absent the sort of detailed regulation the Department of Justice considered and rejected, we are left with only the general command of 42 USC §12182(a) as to what is required and what is prohibited for website accessibility. While the broad scope of Title III of the ADA is laudable in many respects and other contexts, it is anything but a narrowly tailored restriction on speech. The entire text of the ADA does not even mention "speech" except in the context of "speech-impairment." 42 USC §12101 *et seq.* Nor does it mention "web," "website," or "Internet." *Ibid.* There is no textual basis to believe the ADA as amended was even intended to limit expression, let alone that it was a carefully considered and narrowly tailored restriction on the expression of website operators requiring them to add content in order to further the laudable goal of website accessibility.

As applied to Defendant, the website accessibility requirements Plaintiff seeks to impose in the Complaint (for example, in ¶¶24 and 30-38) constitute compelled speech that is not content-neutral or

McCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

speaker-neutral, and thus should be weighed and found wanting under a strict scrutiny analysis. Even under intermediate scrutiny applicable to commercial speech that is neutral and uncompelled, the website accessibility requirements Plaintiff's injunctive demands violate Defendant's free speech rights pursuant to the *Central Hudson* test. Without specific regulations, the Defendant is left with the ADA's broad mandate of accessibility that is clearly not the least restrictive means to further a compelling interest. *See Dex Media West, Inc. v. City of Seattle*, 696 F.3d 952, 966 (9th Cir. 2012) (finding ordinance that compelled Yellow Pages Companies to place a message on their websites to allow customers to opt out of receiving phone books to be violation of intermediate scrutiny for commercial speech).

### 3. Plaintiff's Interpretation of the ADA Results in an Overbroad Restriction on Free Speech

Plaintiff's interpretation of the ADA would, if applied to other third parties' websites that are also public accommodations, substantially burden non-commercial speech and expression that is subject to strict scrutiny.[6] The overbreadth doctrine allows a party to challenge a statute or interpretation of a statute "not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Natl. Fedn. of the Blind of Texas, Inc. v Abbott*, 647 F3d 202, 210, quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973). In a challenge to the overbreadth of a law's (or interpretation of a law, as in this case) impact on free speech, the Court's "task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." *Vil. of Hoffman Estates v Flipside, Hoffman Estates, Inc.*, 455 US 489, 494 (1982). Uncertain statutory or regulatory requirements cause people "to 'steer far wider of the unlawful zone,' [citation omitted] than if the boundaries of the forbidden areas were clearly

---

[6] Defendant does not facially challenge the ADA as it is commonly understood in this motion, but rather challenges only Plaintiff's interpretation of the ADA, as applied, that the ADA requires entities providing public accommodations to publish content on their websites to provide for website accessibility.

DEFENDANT'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6)

McCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

marked." *Baggett v Bullitt*, 377 US 360, 372 (1964); quoting *Speiser v. Randall*, 357 U.S. 513, 526 (1958).  Accordingly, a broad zone of protection for and around Constitutionally protected free speech is warranted.

Here, the ADA applies to all "public accommodations," which includes such places as "an auditorium, convention center, lecture hall, or other place of public gathering," "a museum, library, gallery, or other place of public display or collection," and an "elementary, secondary, undergraduate, or postgraduate private school, or other place of education." 42 U.S.C. §12181(7).  In contemporary society, each of these entities is likely to have a website.  Under the Plaintiff's interpretation of the ADA, each of those entities would be required to make its website comply with Plaintiff's unofficial website accessibility standards.

Plaintiff's interpretation of the ADA would impose website accessibility requirements on the websites of venues exhibiting performing arts such as Carnegie Hall (www.carnegiehall.org), venues hosting lectures of historic importance such as Cooper Union (www.cooper.edu), museums displaying cherished art such as the Metropolitan Museum of Art (www.metmuseum.org) or objects of historic significance such as the American Museum of Natural History (www.amnh.org), and private schools and universities devoted to education such as Columbia University (www.columbia.edu).  While these entities might incidentally engage in commercial speech, their speech and their importance to our society is primarily rooted in the kinds of speech and expression they promote, whether it is of artistic, historic, political, or educational significance.  Restrictions on speech by these institutions would be subject to strict scrutiny, not intermediate scrutiny, as applied to content-neutral restrictions on commercial speech.  *Riley*, *supra*, 487 US at 795.

Plaintiff's interpretation of the ADA would compel speech on the websites of each of these entities, and all of the similarly situated institutions that support and exhibit our society's most valued artistic, historic, political, and educational expression.  Under Plaintiff's  interpretation of the ADA , each of these institutions would be forced to include alt-text, link labels, image maps, keyboard navigation, and keyboard-navigable checkout features on their websites. *See* Complaint ¶¶ 24 and 30-38.  Congress would have had to overcome strict scrutiny to have so abridged the First Amendment rights of America's core cultural institutions, had it intended to do so in its original enactment of the

McCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

20
DEFENDANT'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6)

ADA in 1991 or in its subsequent amendment.  It did not.  Plaintiff must similarly surmount that high bar to overcome the substantial overbreadth her interpretation of the ADA would have on non-commercial, third parties.[7]  Because Plaintiff cannot do so, the Court must dismiss the Complaint.

### D.  Absent The Presence Of Applicable Standards, Plaintiff Fails To State A Cause Of Action Against Defendant And The Court Should Dismiss The Federal And Concurrent State Law Claims

This Court should also dismiss Plaintiff's pendent state law claims. This Court "may decline to exercise supplemental jurisdiction over a claim. . . if the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367. Because Plaintiff fails to state a claim under the ADA—the only claim under which this Court has original jurisdiction— it would seem that Plaintiff's primary purpose for attaching her ADA claim was to get her state claims into federal court, the Court should decline to exercise jurisdiction over Plaintiff's claims on behalf of himself and the New York subclass for violations of New York State Human Rights Law, Civil Rights Law, and City Human Rights Law. *See, e.g., Karmel v. Claiborne, Inc., No. 99 CIV.3608IWK), 2002 WL 1561126, at *1 (S.D.N.Y. July 15, 2002)* (declining to exercise supplemental jurisdiction over California state law claims after dismissing ADA claim). Because federal courts should discourage forum shopping and New York state courts should interpret New York law, compelling reasons exist to decline supplemental jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367.

### E.  In The Alternative, The Court Should Dismiss Or Stay The Case Pursuant To The Primary Jurisdiction Doctrine

Courts apply the primary jurisdiction doctrine where a claim requires regulation of an issue of first impression, or of a complicated issue that Congress has committed to a regulatory agency, and protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme. *Ellis*, *supra*, 443 F.3d 71, 92 (2d Cir. 2006) (vacating the district court's

---

[7] Defendant notes that the Court need not overturn or limit any of the conduct requirements that Title III of the ADA imposes on public accommodations to grant this motion to dismiss.  It need only reject Plaintiff's unwarranted extension of the ADA's conduct limits promoting accessibility into the realm of speech protected by the First Amendment.

1  judgment and remanding the case with directions to dismiss where the district court acted prematurely

2  in not allowing the Federal Communications Commission to decide a broadcasting licensure matter,

3  which was within the exclusive authority granted to the entity by Congress); *see also Clark v. Time*

4  *Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008) (citations omitted) (affirming dismissal of case

5  referring issue of "slamming" – a novel and technical question of federal telecommunications policy –

6  to Federal Communications Commission for consideration in the first instance).

7        While "[a]nalysis is on a case-by-case basis," the primary jurisdiction doctrine inquiry has

8  generally focused on: (1) whether the question at issue is within the conventional experience of judges

9  or whether it involves technical or policy considerations within the agency's particular field of

10  expertise; (2) whether the question at issue is particularly within the agency's discretion; 3) whether

11  there exists a substantial danger of inconsistent rulings; and,  (4) whether a prior application to the

12  agency has been made. *See Ellis*, *supra*, 443 F.3d at 82–83. The advantages of applying the doctrine

13  against the potential costs resulting from complications and delay in the administrative proceedings

14  must be considered. *Id* at. 83.

15        The DOJ is expected to promulgate technical website accessibility guidelines, as it has been

16  tasked to do for nearly a decade. The issue of website accessibility regulation is pressing, squarely

17  within the DOJ's purview, and requires utmost uniformity in administration. In this case, and in others

18  resolving the same issue, the court is tasked with analyzing whether WCAG 2.1's guidelines are

19  appropriate for compliance with the ADA. This exercise necessarily requires a court to weigh policy

20  and technical considerations that are normally within the agency's particular field of expertise.

21  Without an appropriate dismissal or stay, any potential benefit is heavily outweighed by the  risk of

22  inconsistent rulings. While Defendant steadfastly maintains that Plaintiff's Complaint ought to be

23  dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), in the alternative, the Court

24  should dismiss or stay the case pursuant to the primary jurisdiction doctrine.

25  **V.    CONCLUSION**

26        Plaintiff cannot establish that the Website violates the ADA because it is not a public

27  accommodation within the meaning of the law. Defendant does not have physical, retail locations

28  where the Plaintiff could demonstrate a nexus to a physical location. Additionally, Plaintiff's claims

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

22

DEFENDANT'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6)

1   should be denied in their entirety because Plaintiff's lawsuit violates fundamental principles of due

2   process. Lastly, Plaintiff's claims fail because Plaintiff's interpretation of the ADA, as applied to the

3   Website and to the websites of a substantial number of third parties engaged in the most protected free

4   speech activities, is a violation of Defendant's free speech rights under the First Amendment.

5   Therefore, this Court should dismiss Plaintiff's Complaint for failure to state a claim. Fed. R. Civ. P

6   12(b)(6). Likewise, the Court should decline to exercise supplemental jurisdiction over Plaintiff's

7   pendant claims and so dismiss Plaintiff's claims under New York law pursuant to 28 U.S.C. § 1367. In

8   the alternative, the Court should dismiss or stay this case under the primary jurisdiction doctrine until

9   the DOJ formally promulgates adequate website accessibility regulations.

10         For all of the foregoing reasons, Defendant respectfully requests that the Court dismiss the

11   Plaintiff's ADA claim, decline to exercise supplemental jurisdiction on Plaintiff's state law claims,

12   and dismiss the Complaint in its entirety.

13

14

15   Dated:  April 9, 2019                         McCORMICK, BARSTOW, SHEPPARD,
                                                    WAYTE & CARRUTH LLP

16

17

18   By:_____
                                                    Jared Gordon

19

20

21   038091-000000 5953575.1

22

23

24

25

26

27

28

DEFENDANT'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6)

## <u>PROOF OF SERVICE</u>

**STATE OF CALIFORNIA, COUNTY OF FRESNO**

At the time of service, I was over 18 years of age and **not a party to this action**.  I am employed in the County of Fresno, State of California.  My business address is 7647 North Fresno Street, Fresno, CA 93720.

On April 9, 2019, I served true copies of the following document(s) described as **NOTICE OF MOTION TO DISMISS & MEMORANDUM OF POINTS AND AUTHRITIES** on the interested parties in this action as follows:

Dan Shaked                           Email: shakedlawgroup@gmail.com
Shaked Law Group, P.C.
44 Court Street, Suite 1217
Brooklyn, NY 11201

**BY ELECTRONIC SERVICE (E-MAIL):**  Based on a court order or an agreement of the parties to accept electronic service, my electronic service address is dawn.houston@mccormickbarstow.com, and I caused the document(s) to be sent to the persons at the electronic service address(es) listed in the Service List.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

**BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on April 9, 2019, at Fresno, California.


*/S/ D Houston*
Dawn M. Houston

DEFENDANT'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6)